UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEVIN SLATTERY,

    Petitioner,

CASE NO. 6:10-cv-232-Orl-36DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10). Petitioner was provided an opportunity to file a reply to the response but did not do so.

Petitioner alleges one claim for relief in his habeas petition. For the following reasons, the petition is denied.

**I.**    *Procedural History and Facts Adduced at Trial*

Petitioner was charged by information with two counts of aggravated battery with a deadly weapon. The charges stemmed from the stabbing of a husband and wife, Charles

and Virginia Dunson, in their home. A jury trial was conducted.

At trial, Charles Shelton, Petitioner's co-defendant, testified that Virginia and Charles Dunson's home was known as a "drug house." Petitioner and Debra Shelton[1] had been living in the home with the Dunsons.

Charles Dunson testified that on the date of the incident he was in his bedroom when he heard Virginia Dunson call out to him and frantically say, "Kevin, why are you doing that?" Charles Dunson said he walked out of his bedroom at which time Charles Shelton grabbed him by the neck and prevented him from going to his wife. Charles Dunson, however, was able to see Petitioner repeatedly stabbing Virginia Dunson, who was partially lying on a chaise lounge. Charles Dunson subsequently freed himself from Charles Shelton's grasp and attempted to aid his wife. According to Charles Dunson, at that point Petitioner stopped stabbing Virginia Dunson, approached him (Charles Dunson), and proceeded to stab him seven times, resulting in him suffering several defensive wounds to his hands. Charles Dunson said that Virginia Dunson was able to escape while he was being stabbed. Charles Dunson testified that he did not possess a gun at the time of the incident.

Kathy Charles, who was at the Dunson's home in a bedroom at the time of the incident, testified that Petitioner, Charles Shelton, Virginia Dunson, and herself had been

---

[1]Debra Shelton had cancer at the time of the incident and had been prescribed pain medication as a result. The testimony at trial established that someone, either Virginia Dunson, Charles Shelton, or Petitioner, had used or stolen some of Debra Shelton's pain medication. Charles Shelton was Debra Shelton's son. He was charged as a principal in this case and entered a plea.

consuming drugs prior to the incident. She stated that Petitioner left the Dunson's home, but he later returned at which time Charles Shelton let him into the house. After letting Petitioner into the home, Charles Shelton returned to the bedroom and told Kathy Charles that Petitioner wanted to speak with Virginia Dunson. Kathy Charles said that the Dunsons were in their bedroom when Petitioner returned and the house was very quiet until she heard Virginia Dunson scream and say "Kevin don't."

According to Kathy Charles, Charles Shelton initially prevented her from leaving the bedroom. When she was able to exit the bedroom, Kathy Charles observed Petitioner standing over and repeatedly stabbing Virginia Dunson, who was on the floor. Kathy Charles stated that Charles Dunson attempted to stop Petitioner from further stabbing Virginia Dunson, but Charles Shelton pulled him off Petitioner. Kathy Charles testified that she saw Petitioner stab Charles Dunson when he tried to stop Petitioner. She further stated that Virginia Dunson was able to escape from the house. Kathy Charles said that she did not observe anyone with a gun in his or her hand and that she did not see anything in Virginia Dunson's hands during the incident. Charles Shelton likewise testified that he did not see a gun or hear a gunshot at the time of the incident.

A paramedic testified that Virginia Dunson had numerous stab wounds and lacerations, including on her hands, back, and the back of her head. A police investigator testified that he observed a trail of blood on the road leading away from the victims' house toward an intersection. It was determined that the blood trail was left by Virginia Dunson when she fled. Investigators found a gun in a holster approximately five feet from the

3

shoulder of the road on the opposite side from the blood trail and approximately fifteen to twenty feet away from the blood trail. No blood was located near the gun. Sergeant William Clark, the crime scene investigator, processed the gun and did not detect any blood on the weapon.

Petitioner testified that he had been at the Dunson's residence on the date of the incident helping repair their well. Petitioner stated that he left the residence but later returned at which time he called for Virginia Dunson. Petitioner said she exited her bedroom, went into the kitchen, and removed chicken from the refrigerator and began to cut it. Petitioner testified that he mentioned to Virginia Dunson that Debra Shelton was missing some pain medication she had been prescribed. According to Petitioner, in response to his statement, Virginia Dunson became irate and said Debra Shelton owed her money for crack cocaine.

Petitioner said he then was hit from behind with a barstool and Virginia Dunson called for Charles Dunson to come out of the bedroom with his gun. Petitioner maintained that Virginia Dunson sat on his butt and pinned him face-down to the floor by placing a barstool across his neck and back. Petitioner testified that he was not aware if Virginia Dunson still had a butcher knife in her hand and therefore he took out his knife and began swinging.

Evidence was admitted establishing that Virginia Dunson had more than ten stab wounds and multiple defensive wounds on her hands. Petitioner stated that his knife was in a holster on his side and two hands were required to open the knife. Petitioner later

4

testified, however, that the blade was loose so the knife would snap open.

Petitioner said that he freed himself from Virginia Dunson and subsequently observed Charles Dunson exit the bedroom with a gun and fire one shot. Petitioner testified that he grabbed Charles Dunson's arm, causing Dunson to drop the gun, and Petitioner cut him a few times. Petitioner maintained that he was in fear of his life when Virginia Dunson hit him from behind and that he had heard Charles Dunson say prior to the incident that he had a gun.

In rebuttal, Sergeant William Clark testified that he did not observe any food preparation in the kitchen, any evidence of gun shots in the house, or a butcher knife in the kitchen or area of struggle when he processed the crime scene.

The state court instructed the jury on the defense of justifiable use of force (self-defense). The state court, however, instructed the jury on the forcible-felony exception to the self-defense instruction despite defense counsel's objection. The jury found Petitioner guilty as charged. The state trial court sentenced Petitioner to a fifteen-year term of imprisonment for count one and to a consecutive five-year term of imprisonment for count two.

Petitioner appealed his convictions. Petitioner argued *inter alia* that the trial court violated his right to a fair trial by instructing the jury on the forcible-felony exception to self-defense. The Fifth District Court of Appeal of Florida initially found that the trial court committed fundamental error by instructing on the forcible-felony exception. The appellate court, however, vacated the order and certified a question to the Supreme Court

of Florida. Thereafter, the Supreme Court of Florida addressed the issue of the forcible-felony exception in *Martinez v. State*, 981 So. 2d 449, 454 (Fla. 2008). The Supreme Court of Florida subsequently remanded the instant case to the Fifth District Court of Appeal for reconsideration in light of *Martinez*. On remand, the Fifth District Court of Appeal of Florida affirmed *per curiam* with citation to *Martinez*.

## II.     *Legal Standard*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state

> court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### III.   *Analysis*

Petitioner's sole claim is that the trial court committed fundamental error by instructing the jury on the forcible-felony exception to the self-defense instruction. In support of his claim, Petitioner maintains that the forcible-felony exception instruction was not applicable in the case and improperly negated his defense. As such, he maintains that his rights to a fair trial and due process were violated.

The Eleventh Circuit Court of Appeals has held that a federal court's role on habeas review of a state law jury instruction is

> to determine whether any error or omission in the jury charge was so

7

> prejudicial as to amount to a violation of due process. In making that determination, we do not judge portions of the jury charge, or even the entire charge, standing alone. A defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.

*Agan v. Vaughn*, 119 F.3d 1538, 1545 (11th Cir. 1997) (citations omitted).

Pursuant to Florida law, the forcible-felony exception to self-defense is not applicable unless the defendant was engaged in an independent forcible-felony. *See Martinez v. State*, 981 So. 2d 449, 454 (Fla. 2008) ("[F]or the forcible-felony instruction to apply, there must be an independent forcible-felony other than the one which the defendant claims he or she committed in self-defense."). Thus, for the forcible-felony exception to be applicable, the defendant must have been engaged in another independent forcible-felony, such as burglary or aggravated battery. *See, e.g., Marshall v. State*, 604 So. 2d 799, 803 (Fla. 1992) (concluding that forcible-felony exception to self-defense was applicable to felony murder or third degree murder where the underlying felonies were burglary and aggravated battery). When "the challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is 'so flawed as to deprive defendants claiming the defense . . . of a fair trial.'" *Martinez*, 981 So. 2d at 455 (quoting *Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988)).

In *Martinez,* the trial court erroneously instructed the jury on the forcible-felony exception. *Id.* Nevertheless, the Supreme Court of Florida determined that the erroneous forcible-felony instruction did not deprive the defendant of a fair trial. *Id.* In so ruling, the

Court reasoned that self-defense was not the only strategy pursued by the defendant, and thus, the forcible-felony instruction did not deprive the defendant of his sole defense. *Id*. at 456. The *Martinez* Court further reasoned that the forcible-felony instruction did not deprive the defendant of a fair trial because his claim of self-defense was extremely weak. *Id*. The Court noted that the victim had multiple stab wounds to her body, whereas the defendant had only one small cut on his finger. *Id*. The Court further noted that the victim was stabbed in the back. *Id.* Thus, the *Martinez* Court concluded that even if the forcible-felony exception had not been read to the jury, the likelihood that the jury would have found Petitioner not guilty based on self-defense was minimal at best. *Id.*

In the instant case, the Fifth District Court of Appeal of Florida *per curiam* affirmed Petitioner's conviction with a citation to *Martinez*. There is no question that the forcible-felony instruction was not applicable in this case pursuant to Florida law. Moreover, unlike the facts in *Martinez*, in the instant case, self-defense was Petitioner's sole defense. Thus, the Fifth District Court of Appeal presumably determined that no fundamental error occurred based on the erroneous instruction because Petitioner's claim of self-defense was so weak that there was no possibility that a jury would have found him not guilty based on self-defense absent the erroneous forcible-felony instruction.

After reviewing the evidence presented by Petitioner in support of his claim of self-defense, the Court cannot conclude that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petitioner's claim of self-defense is not rational and is not supported by the

9

evidence.

Petitioner testified that he was hit from behind with a barstool at which time Virginia Dunson pinned him to the floor on his stomach with the barstool on his neck and back and her weight on his lower body. Despite his upper and lower body being pinned face-down to the floor, Petitioner maintained that he was able to remove a knife from a holster at his waist and swing it in such a manner as to inflict numerous wounds to Virginia Dunson, remarkably including stab wounds to the back of her head and to her back. Furthermore, Petitioner amazingly did not suffer a single wound during the altercation. Likewise, all of the witnesses, including Petitioner's co-defendant, testified that no one had a gun during the incident, nor did anyone hear a gun discharge. Although there was a firearm found by investigators on the road leading away from the victims' home, the gun was in a closed holster, did not have any blood on it, and was found approximately fifteen feet from the blood trail left by Virginia Dunson.[2] No one corroborated any of Petitioner's testimony nor did the physical evidence support his claim of self-defense. Finally, the evidence established that the victims suffered numerous injuries from multiple stab wounds. Thus, Petitioner's self-defense argument was weak, and he was not deprived of his right to a fair trial. *Cf. Fields v. State*, 988 So. 2d 1185 (Fla.

---

[2]The Court notes that from Petitioner's testimony, Charles Dunson fired the shot after Petitioner had stabbed Virginia Dunson. The other witnesses testified that Virginia Dunson left the house when Petitioner began to stab Charles Dunson. Thus, Virginia Dunson would have had to retrieve the gun that Charles Dunson allegedly dropped before she escaped the home. If she had done so, given the testimony concerning the amount of blood left at the scene, it would have been incredible that the gun did not have blood on it, if in fact Virginia Dunson had carried it.

5th DCA 2008) (distinguishing *Martinez* and concluding that the defendant was deprived of a fair trial based on erroneous forcible-felony instruction when no inconsistencies existed in the defendant's self-defense testimony, the defendant suffered severe injuries, and at least one witness corroborated his testimony). For these reasons, the Court concludes that Petitioner has not demonstrated that the state court's denial of this claim is contrary to or an unreasonable application of 2254(d) or an unreasonable determination of the facts in light of the evidence.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934. However, a

prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Kevin Slattery is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 11th day of June, 2012.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 6/11
Counsel of Record
Kevin Slattery